Good morning, Your Honors. Donna Kirchner on behalf of Appellant Resilient Floor Covering Pension Fund and its Board of Trustees. Good morning, Counsel. The question in this appeal is both narrow and novel. Specifically, in the construction industry, what kind of notice, if any, does equity require in order to impose withdrawal liability on a successor employer who has made a conscious decision to take over its predecessor's customer base without paying for it? Are you conceding that notice is required? I believe I said notice, if any. Well, what is your position on that? It was unclear to me from reading the briefs. Our position is that there are the equity might support finding successor liability even if there was no notice. However, in this particular case — Well, wait. Is that your position? I mean, you said might. I want — Judge Keeley, ask what your position is. Is it your position that liability, millions of dollars of liability, can be imposed on a successor? Because there's a fact issue about whether they're a successor. So let's assume that they are for the moment. Millions of dollars of liability can be imposed on a successor with no notice whatsoever? Our position is tied to the facts of this case. And at a minimum — No, no, no. It's a yes-or-no question. We believe — Because your briefs seem to say that. Yes. We believe there are some circumstances if equity is otherwise satisfied, because the notice requirement is a way — one way of satisfying equity. So, for example, in the — So your position is, just so I'm clear, that under the facts of this case, liability can be imposed on the successor even if the successor didn't even know that there was a pension fund and didn't know it was underfunded. Is that your position? So long as it's understood that he did know that the union labor was being used. Yes. I understand. I understand. He knew there was union labor. And there's — And he didn't. But he didn't know. Let's assume, for purposes of my question, he had no knowledge whatsoever that the pension fund was underfunded. Our position is that, knowing that there is a pension fund that the predecessor was contributing to, he was on at least inquiry notice to determine whether there's a potential for — What case do you cite for that? Is there any case anywhere in the country — Yes. It's ever imposed liability when somebody didn't know that the fund was underfunded? Yes. The Full Circle case, I don't have the full name. I have the cite here. It's 826F3994. In that case, Judge Posner noted that even if the successor has no idea that — Well, but the Full Circle case, as I understand it, was the son taking over the father's company, right? Yes. And he was represented by counsel who structured the deal. Yes. And what I think Judge Posner was saying, but tell me if I'm wrong, is, oh, come on. You can't possibly claim you didn't know there was an underfunded pension fund. You took over the company from your father, and you had a lawyer structure the deal. I don't think he was saying that no notice is okay. He was saying under the facts of this case, notice can be inferred, right? In that case, and in that case, there was also an actual purchase by the successor. Right. And that is — He purchased the company. It was his father's company. The family lawyer structured the deal, and Judge Posner said, come on, don't tell me you didn't know. And one of the reasons he had — Buyer knew there was a union pension fund, that — I believe that's a fact in that case. They — they did not know about withdrawal liability, but they knew about the pension fund. And in this case, the — the magistrate judge found there is a reasonable inference that Michael Hassel, the owner of Michaels, knew that the — that Studer's was contributing to a pension fund. She did not find the — Right. Let's assume — let's assume that the facts of this case give rise to a reasonable inference that the successor knew that there was a pension fund. I'm not sure they do, but let's assume that for the moment. Your position is under those circumstances, the successor need have no notice that the pension fund was underfunded. I believe it would be inquiry notice under the circumstances. If you read — Our previous decision, which we can talk about a little of the case later, but our previous decision said actual notice. And so — Your — My question is, your position is that he need not have any actual notice that the pension fund was underfunded. The prior decision didn't say notice of what. And the prior decision specifically said that equity considerations are a support of finding — We're dancing around each other here. Okay. Either you have a position or you don't. Is it your position that in the absence of actual notice of underfunding, just simply because somebody knows that there's a pension fund, that that successor is liable for the underfunding? We believe that equity is satisfied and that, yes, a court — reasonable triary of fact could find liability when balancing the equities, not just of the successor who's getting a windfall of business that it hasn't paid for, that has — it has been able to use insider information before the predecessor closes. Let me go back. And not taking into consideration — Let me go back, then. Tell me what case says you can impose successor liability in the absence of actual notice. You cited the Seventh Circuit case. But the Seventh Circuit case, as I read Judge Posner, he was saying, oh, come on. We can infer actual notice from this set of facts. Right. And that's the facts at issue there. There's at least one context where a regulation says notice is not required at all. And that's under the Family, Medical, and Leave Act. Which is not — which is not the way you're talking about here. Right. And the Supreme Court and this Court have repeatedly said that successor liability needs to be determined based on the policies underlying the Federal statutes at issue and based on the facts. Well, those cases deal with, as I read them, help me if I'm wrong, whether or not someone is a successor. And there's a fact issue here about whether or not these guys are a successor. But I'm trying to find a case that tells me that, assuming they're a successor, they really don't have to know that there's a pension fund that's underfunded just because they're a successor, that's enough. There is no other case out there that is on all fours with this case in every respect. And the distinction between Full Circle and this case, Full Circle is the closest because — but the distinction being there's no payment for the customer information and the goodwill. There is nonetheless a transfer of the customer information and the goodwill in a manner that would not be allowed if Studer's was not closing down. Any reasonable employer would say to its longtime salesman, don't you dare go solicit my customers for your business you're going to open in three months while you're still working for me, but he did. Don't — you know, he — the predecessor actively helped him get the phone numbers so that when they called, they'd get the same guy. There were steps taken. And the first panel in its first footnote made a note that it was hampered in fully explaining its decision by the sealing of documents. Those documents have all been unsealed at this point. We had to file some under seal because the appellee wanted to maintain its confidentiality designations, but then did not support those with a declaration, so the court unsealed everything. So the business plan that the — and the business plan was specifically mentioned by the prior panel in footnote No. 1. And the business plan talks about there being a void that's going to come into the success of Michael's new company, is dependent on continuing relationships. How is that going to notice, actual notice? I mean, isn't the argument that you have to make here either if there's notice required, apparently you don't think it's actual notice, despite what the panel said in Resilient. You think it's some kind of inquiry notice that should depend on, what, some factors that we should consider? Two things. One, yes, there are different factors depending on the facts, what satisfies equity. And all the facts about how this happened go to whether it's equitable to have imposed a liability with less notice than you might otherwise require. But Resilient doesn't do that. Resilient says there's an issue about whether someone's a successor, but they never take up the question of what kind of notice is required. Yes. That is the issue here today, is it not? Yes. And the reason the statements in the But just because you're a successor doesn't mean you therefore have notice. Right. It's been separated out. Some of the other cases mingle it more, but the prior panel separated it out. Notice was not at issue there because notice was not part of the district court's decision. At the district court level, we're aware of that. So although she could have, because on the same factual record, summary judgment was before her the first time, she could have granted it on both grounds and it would have been before the first panel. In any event But would you do agree that the first panel requires, the law of this case requires some sort of notice? I believe it was dicta when they talk about notice. They talk about a bona fide successor needing notice, and I discuss that in the briefs. They're in the discussion of the prior Nothing in the opinion that says bona fide. The holding says so long as the successor has notice of the liability. Not of unions, but of the liability. That's so long as there's two places in the opinion it said it. In one place it's quoting a prior Supreme Court case in a different context, which the district court inadvertently, I think, attributed to this panel, the panel in this case. The first time it says they conclude, it doesn't say we hold, it says we conclude so long as, and we do believe that's dicta. So let's assume it's dicta. Assume it's dicta. And, well, I think what supports that, what supports that is another part of the case where it says where a successor makes a conscious decision to take over the customer base of its predecessor, equitable principles that are the source of successor liability. Take yes for an answer. I'm saying I'll agree with you, it's dicta, okay? Was it wrong? It depends on what notice means. You can't have notice of an actual liability under the construction industry exception, because on day one there is no the exception doesn't allow withdrawal liability against anyone. Do you think Judge Berzon was wrong? No. I think she was making a general statement of successor liability and not specifying what that notice is as to notice of the liability. Since there is no liability on day one, it must mean notice that there could be liability. So you're, I keep asking you this and I keep, I'm not sure I'm getting a single answer. Your position is that when somebody in the construction industry buys a company with some information that is unionized, successor liability is automatically imposed. Not when they buy the company. When they come in, use insider information to set up essentially the same company to take over. But they become a successor. They become a successor. I told you they're a successor. They're an honest to God successor. But they didn't pay anything for the customer information. An honest to God successor. All the things that make you a successor. You're saying if you're a successor in the construction industry, you're subject to liability for an underfunded pension fund no matter what. No, we're saying when you get a windfall of business because you didn't pay for all that insider information. Don't, I gave you all that. You're a successor. That's why you're a successor. No, there can be a successor that paid, that went in and bought the Goodwill. I'm down to two minutes, I hope. No, but you've got to answer my question before you sit down. Yes, of course. Under all those facts, notice is completely irrelevant in your view. Only if they haven't paid for the customer information. You said that already. They haven't paid for the customer information. If they haven't paid for it. Then they need no notice at all that there is an underfunded pension liability. Either no notice or at a minimum notice of the union or perhaps even that there's a union related pension fund. I'm sorry, why does it matter whether they paid or didn't pay? I beg your pardon? Why does it matter whether they paid or didn't pay? For a few reasons. If they're paying for it, there are procedures of due diligence and whatnot which are more likely to result in parties looking at the issue. In the construction industry, the reason they don't do that is because the sellers are concerned about this, the fact that there's a successor is going to mean there's going to be withdrawal liability and they may be subject to liability for some or all of that. It will bring the issue out instead of hiding it and trying to step around it, which if you look at the amicus brief that was filed in the prior appeal in this case, you have construction industry employers saying, we're not going to be able to make any money if we can't pass on our assets and access to our customer lists without getting withdrawal liability imposed on this one or the other. There are many other employers trying to do this, and in fact, Congress was saying you get this exception because you're not doing that. But all the employer has to do, I mean, I'm not worried about the employer here. All the employer has to do is say to the successor, here, there's contractual arrangements. By the way, I've got an underfunded pension fund. And then so the difficulty with the previous case was that it suggested that employers couldn't even do that, and that's why we sent it back, to use the appropriate standards for a successor. I'm afraid I'm out of time, and I... Okay. Okay. We'll hear from the other side. Members of the court, counsel, may it please the court, my name is Bob Miller. I represent the defendant, Michael's Floor Covering, Inc. I'd like to, if I may, just introduce that my clients, Mike and Evie Hazel, are in the back of the courtroom this morning. I'd like to start with the point that the reason for notice is fairness. We have to have some opportunity for the defendant to understand, or the putative successor to understand what liability he might face. And that comes from, not just Ninth Circuit jurisprudence, but it starts with the United States Supreme Court in Golden State Bottling in 1973. When this doctrine came into position, the United States Supreme Court said, the reason that we can do this, the reason we can impose this equitable liability, is because there is first notice. Notice gives an opportunity for the purchaser to negotiate for protections against this liability. Well, so we have Judge Posner's opinion in the Seventh Circuit case, in full circle. I think it's full circle I'm looking at. It is. It's called Board of Trustees versus Automotive Mechanics, or something like that. It's the mechanics union? Mechanics union case. What became to notice? Which says, hey, you bought, you're the successor to a unionized company, and knowing that the company was unionized, you almost certainly should have known that there was a, it was required to a pension fund, and that should have alerted you to the possibility of withdrawal liability. Why, if, do we have to disagree with Judge, and we can't? No, no. I think Judge Kaczynski has done it before. But do we have to disagree with Judge Posner here to find in your favor? Take a look at some of the other facts at page 19. No, I understand the facts are different, and that's what I told you. Oh, no, no, no, no. That's what I told your colleague. But that statement, that statement, you knew you were in a construction industry, you knew there was a union, and there's at least some evidence in this case that your client knew there was a union. Why isn't that enough to impose liability under Judge Posner's view of the law? Because the son who took over the father's business also, his company made contributions to the mechanics union fund, and his company was bargaining with the mechanics union, and he acknowledged that there was funding for a pension fund. All of those facts are at page 995, 96 of the Seventh Circuit's opinion. And if you look at the district court's unreported opinion that the appeal was taken from, you'll see the myriad facts. This was a conglomerate that was built, formed in 1952. In 2007, the son went out to start his own company to take over the father's company. It was a family-owned business for generations, and as I said, it was a big conglomerate that was shipyard work. But I'm again reading the judge, and he may be wrong. Judge Posner's been wrong before. But Mark Hanna may have never heard of withdrawal liability or known that the union pension fund was underfunded, but knowing that he was dealing with the union pension fund, he was unnoticed, there was a possibility of such liability. Is that not a – your view is that's wrong, is it? No, I don't view that as wrong, but here's the difference. You had – the son was a participating employer. A participating employer has certain information. Annually, the DOL regulations, 29 CFR 2520.101, requires the multi-employer pension fund to every contributing employer, which would have been the son, tells about whether or not it's underfunded, whether the multi-employer pension plan is underfunded or not. So the son, in that case, would have had access to a lot of information about the underfunding. Now withdrawal liability attaches only if, at the time the contributing employer ceases participation, there are underfunded – allocable under – unfunded liabilities in a multi-employer pension fund. That annual statement that every contributing employer would have received, of which Mark was a contributing employer on his own in his new company, would have told about that underfunding that would have given rise to withdrawal liability. In this case, and this is the interesting thing, the fund has the access to that information. The point in time that's important here is up through December 31, 2009, because Mike started installations on January 1, 2010. Did he know at any time on or before December 31, 2009, about the potential for contingent withdrawal liability, that is, unfunded liabilities? The fund would have had the statements under 29 CFR 25 – 20.101, the annual statements that would have said underfunded in 2009, underfunded in 2008. So it's not as counsel said, well, we really don't know because it's not until after they withdraw. You know going up to the end of your year, if you are in a fund that is underfunded and that will give rise to withdrawal liability under 29 – Let me change the facts in this case, because as I understand it, your client begins to deal with the predecessor in the fall of the year. The deal closes as of the first of the year, right? No, he never made a deal. He never bought the company. I understand, but there are some agreements here to, for example, to let you use the phone numbers. No. No. What happened was Scott Studer called the company and said I'm not going to be using the phone after 12-31-2009, and so the company then released that number to Mike. So there are some interactions between – let's not make them contracts – between your client and the company in the fall. There's that one. And then Mike also bought – Scott sold his – Other things happen. So what if the union pension fund at that point in time had said, oh, Michael, you're dealing with Studer's, here's – we have unfunded liabilities. Would you then be liable for them if you were a successor? If Mike had notice from the trust, fine. Well, notice from anyone. But I'm saying they know you're dealing with Studer's, and so they run up with – they say glad you're here. I want to let you know if you buy this company, there's unfunded pension liability. No. If a competitor of Mike's just walked up and said, hey, there's this, without any indicia of reliability, hey, there's this unfunded liability, in order to scare Mike off of going into business, no. But if they had notice from the fund – Wouldn't that at least create a question of fact about whether you had notice? If somebody who had no – No, there's – if – Who is this person? And now – The facts in this case are not that a competitor told you that this fund was underfunded. He just told you that he was tired of contributing to his fund. He didn't, actually. Okay. All he said was if the pension was funded, I'd go union tomorrow. Right. But there's no – but what – see, I think you get yourself in some trouble here. Yeah. If a competitor came to you and said, hey, Mike, I'm a nice guy. If you're going to buy that company, you know they have unfunded pension liabilities. Under that circumstance, truly, at least, there would be a question of fact for the district court to figure out whether you had notice. I mean, I don't understand why you're going there. If somebody just – if somebody out of the blue just says, oh – Well, you could argue – you could argue that the fact – you could argue the weight of that evidence. Here's what I'll give you. Surely that would be enough. No, it wouldn't. And here's what I'll give you. To get you some re-judgment? Here's what I'll give you. If – if Mike had information from Studer's or from the fund that it was underfunded, then we have a different case. That didn't happen here. Studer's testified it was not aware – Scott Studer testified he was not aware that he could be subject to withdrawal liability. And his bookkeeper testified that there were no communications between the fund and Studer's about withdrawal liability. I understand your point that your client had no notice. The reason that you and I are having difficulty is your statement that the notice has to come on the official letterhead of the fund or from Studer's. Notice can come from lots of places. Yes. And the place where it's come up is usually in, like – I know. So – Well, where it's come up is in due diligence in a transaction. Again, there wasn't a transaction here. Like the court pointed out in full circle, represented by lawyers making a transaction, buying leases, buying shipyard equipment, at a point in time where there is some indicia of reliability and you find out, hey, we've got – You're talking about indicia of reliability. Well, in response to your hypothetical – Indicia of reliability is not a summary judgment standard. But there was no evidence here, Your Honor. That's right. And stay there. Don't – stay away from your argument that somebody reliable has got to tell you. Right. You were posing a hypothetical. I was trying to respond. Here, there is no evidence. None. Well, you do have – there is some evidence that your client knew this was a unionized company. True. And Judge Posner says when you know there's a unionized company and it's common knowledge that pension – that companies have pension funds, and it's common knowledge that they're underfunded, that's enough to create a fact issue on notice. So without distinguishing – I just – Without trying to distinguish the facts in that case, tell me, is that wrong? I don't think that that's an accurate statement of what Judge Posner said. He said, surely the son – I just said it, then. I just said it. Well, now we're back in hypotheticals. Is that wrong? No. Is that wrong? A hypothetical that you proposed or the case – Okay. Here are – here's the entire world of facts. You buy a company that you know – you're a successor to a company that you know has a union. Yes. That's all you know. Yes. Is that – is that enough to impose successor liability? No. No. No. And then there's another element of the notice here, too. Remember that in this case there was no transaction. There's never been successor liability imposed like this for a circumstance where there was no transaction. And the law didn't even recognize in any circuit, but certainly the Ninth, the law never said prior to January 1, 2010, when Mike started operations, that a person could be deemed a successor. But you lost – you lost that issue the first time up. There's a fact issue about whether you can be deemed a successor. No. I'm on the notice issue. I'm on the notice issue, and it's this. Nobody in 2009 knew that somebody who didn't buy a company and where there was no event of withdrawal by the predecessor, that that person, in the absence of any transaction, in the absence of already imposed liability, could be liable for it. In other words, there was no source Michael could have gone to and said, does this liability exist? What would happen? And think of the havoc that something like this would raise. Because all that Studer's did was go out of business. It dissolved. And more than five years has passed now, so actually there has been no event of withdrawal. But think about it. Studer's simply just went out of business. Now there are three salesmen, including Mike, who are out there working for non-union companies. And they're having to do work that at some point was done by Studer's. They're doing it for clients. What does that have to do with the notice issue? What does it have to do with the notice issue? Yeah. How would Mike or any of those folks have any idea they could be subjected to withdrawal liability? And what about Studer's? How does Studer's end up having withdrawal liability when all they did was quit? What they're asking to do here is turn everything upside down. But I'll get back to the notice. There is no notice. There is no evidence. The court decided it correctly. And you should uphold it. You seem to take the position in your briefs that really the burden was on the union because it knew that Studer's was going out of business and that your client was taking over that it should have come to Mr. Hassel and demanded that he engage in collective bargaining. They could have. They could have protected themselves. You seem to take the position that since he didn't otherwise have notice, assuming your argument, that this is all the union's fault because they could have done it and they didn't do it. No. No. Important distinction. The union is not a party here. The fellow who was with the union who had that knowledge was also a trustee on the board. The trustee, right. Yeah. And he knew at the time, and all they had to do was walk up and say, oh, by the way, here's the funding statement under 25-2101. But are you asking us to impose a rule that where the union can, it should? No, I'm saying that this record, if the evidence existed, they could have put it in there, but there was no evidence. Well, what would your rule be that you would have us adopt regarding notice? Well, that there has to be actual notice. There has to be actual notice. What do you mean by that? Actual notice of the contingent liability that the individual knows that, first, in the course of a transaction, where there's some kind of reliable evidence. Stop. Look. Your position is there's no evidence. There's no evidence here, but I'm being asked to form a hypothetical rule. And, I mean, I could do that. You keep talking about a transaction, but it seems to me that at that point you're fighting the successor issue. You're saying there's really no successor if there's no transaction. Well, the notice issue has come up in the courts. The courts have said, look, there was a transaction, there was due diligence, like the ManWeb case where they went in, they did due diligence, they learned of the unfunded liabilities. The same thing with Full Circle where they were contributing, there was a transaction. The judge said, you've got to be kidding me. This is a structured transaction with lawyers. Well, but you have to accept the idea that you can have, that you can be a successor without a transaction. I mean, it's. . . That's never happened except for in the Bates case where. . . This case, Judge Berzon said you can become a successor. There's a fact issue about whether you can become a successor without a transaction. And the district court on remand said we're going to have to have a trial about that. That's not a summary judgment issue. I know that you don't like that, but that's certainly the law of this case, isn't it? I'm not going to argue the point. I mean, we're here about notice. We're not about mere notice. Correct. Correct. If you keep insisting on a transaction, then it seems to me you're just not accepting that. I'm not arguing the holding of the case. What I'm raising it for is this. In every circumstance where it's happened, the cases that we can look to, the cases that would put a person on notice before they undertook this work. And what was Mike to do? How was he to protect himself? Just not go into business? Is nobody to do ñ is no non-union company to do the work for the customers that the dissolving company left? There's lots of ways he could have gone into business without becoming a successor. Sure. He could have not used the customer risk, not risk being a successor. Right. He could have not used the telephone numbers. Right. I mean, there's lots of things he could have done. If those things are deemed to make him a successor, yes, but we're not at that issue. So what I'm looking for is how do we answer the question in Golden State Bottling, and that is this, how could a person in Michael's position, knowing what he knew and not having the information he didn't have, protect himself from this, which is then point of notice? Thank you. No evidence. Thank you, Your Honor. You are out of time. We'll give you a minute for rebuttal. A minute. As far as what he could do, should he go into ñ not go into business, actually I think maybe Congress intended that. Congress wanted the funding base to stay with the union workers. As to no one in 2009 knew about withdrawal liability, that did not stop the court in full circle from imposing successor liability. If you look at the timing of the events in that case, they're back in 2009. And then if you would please look at the testimony by Trustee Battaglia, who the magistrate judge acknowledged was a trustee of this pension fund. His test, and that's at AER 013 of the district court order. The testimony at AER 134 to AER 136 shows the context of the conversation about whether Michael should go union. Why shouldn't he go union for his company? He's talking to a trustee of this pension fund. And I would ask that the court remand, reverse and remand with instructions that the court find that all ñ that the notice is union and perhaps a pension fund. Wait, wait, wait. Before you sit down. What relief were you seeking? I thought when I read your brief you were simply seeking that we find that there was a fact issue on notice and that there be a trial. Correct. You're asking us to ñ when you just said it, you're asking us to find that there was notice? To find that she needs to have a trial on the issue of notice and that notice doesn't need to be actual notice of an existing liability or notice and full understanding of withdrawal liability. In other words, to give her some guidance that the only notice required is that there were ñ was union labor and a union-related pension fund with contributions being made to it. Thank you, Your Honors. Okay. Thank you. Cases, I will stand submitted. We're adjourned.
judges: Kozinski, Hurwitz, Keeley